IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lucas Ford, LLC,                                         Case No. 3:09CV451

           Plaintiff/Counterdefendant

      v.                                                     **ORDER**

Ford Motor Credit Company, *et al.*,

           Defendants/Counterclaimants/

           Third-Party Plaintiff

      v.

Sean M. Gouhin, *et al.*,

           Third-Party Defendants

This case began as a suit by an auto dealer, Lucas Ford, LLC (Lucas Ford), against a manufacturer, Ford Motor Company and Ford Motor Credit Corporation (FMC). The claims against Ford Motor Company are no longer at issue.

FMC filed a counter-complaint against Lucas Ford and a third-party complaint against the guarantors, Sean Gouhin and Christopher W. Lucas (Guarantors), of Lucas Ford's financial obligations to FMC. The gravamen of this dispute is FMC's effort to collect on the Guarantors' commitment for monies FMC claims Lucas Ford, which apparently presently is defunct, owes to FMC.

Pending are two summary judgment motions by FMC: 1) for dismissal of Lucas Ford's complaint against FMC (Doc. 79); and 2) for summary judgment as to FMC's monetary claims against Lucas Ford and the Guarantors. (Doc. 59).

For the reasons that follow, both of FMC's motions shall be granted.

## Background

### A. Factual Background

Many facts are not in dispute.

In April, 2006, Lucas Ford bought the assets of Lima Ford, Inc., which had encountered financial difficulties. When Lucas Ford bought Lima Ford, it entered into a Franchise Agreement (2006 Franchise Agreement) and a Wholesale Financing and Security Agreement with FMC (2006 Financing Agreement).

In January, 2007, Lucas Ford terminated the 2006 Financing Agreement. Lucas Ford began financing its wholesale inventory with American Honda Finance (Honda Finance). This was part of a concurrent agreement with Honda Finance for financing of a "sister store," Immke Honda.

On November 15, 2007, Lucas Ford executed a second Automotive Wholesale Financing and Security Agreement with FMC. (2007 Financing Agreement). In conjunction with the 2007 Agreement, Lucas Ford signed a Security Agreement giving FMC a first secured interest in, *inter alia*, Lucas Ford's motor vehicles, service parts, furniture, machinery, equipment, accounts, contract rights, chattel paper, and general intangibles.

In addition and also on November 15, 2007, the Guarantors signed a "Wholesale Financing Guarantee" guaranteeing payment of the obligations of Lucas Ford to FMC.

On July 23, 2008, Lucas Ford defaulted on its payment obligations to FMC by selling vehicles without paying off the wholesale balance within the allowed time. This practice is denominated "Sale Out of Trust." (SOT).

On learning of these events, FMC demanded payment of more than $800,000 to recoup the amounts owed for the underlying transactions. FMC suspended further advances under the 2007 Financing Agreement.

On August 4, 2008, Lucas Ford paid the SOT amount to Ford Credit. The credit line under the 2007 Financing Agreement remained suspended. On September 22, 2008, FMC notified Lucas Ford that Lucas Ford had to meet capitalization requirements with an investment of $500,000 and take other steps to become profitable.

On November 3, 2008, FMC conducted an audit of the inventory of Lucas Ford and discovered four vehicles which had been sold without payment to FMC.[1] On November 11, 2008, FMC again audited Lucas Ford's inventory. That audit disclosed SOT amounting to $79,346 and five more vehicles as sold and unpaid (though still within the allowed period for tendering payments).

These circumstances led FMC to notify Lucas Ford by letter dated November 11, 2008, that it had until January 12, 2009, to find an alternate finance source.

On February 2, 2009, representatives of Lucas Ford met with representatives of FMC. At that meeting Lucas Ford executed and delivered to Ford Credit a Voluntary Surrender Agreement (VSA), thereby surrendering possession of "motor vehicles, tractors, trailers and implements" to FMC (Surrendered Vehicles).

In exchange for the VSA, FMC agreed to refrain from initiating litigation against Lucas Ford and from physically taking possession of the Surrendered Vehicles for five days. FMC understood

---

[1] These vehicles were not, as of that date, in an SOT status, as time for Lucas Ford's payment had not expired.

3

Lucas Ford had been trying to sell its franchise to one Tom Reineke. FMC also agreed not to take possession of the Surrendered Vehicles if Lucas Ford met certain conditions before February 7, 2009.

On February 13, 2009, Lucas Ford began this litigation with a complaint in the Allen County, Ohio, Court of Common Pleas. Defendants removed the case to this court.

On March 4, 2009, FMC filed its counter-claim against Lucas Ford and third-party complaint against the Guarantors.

In a nutshell, FMC claims that the Guarantors owe it whatever Lucas Ford cannot pay of what it owes FMC. Its third-party complaint against the Guarantors rests on the 2007 Financing Agreement between it and Lucas Ford. If the 2007 Financing Agreement is valid, and is unaffected by ensuing events, FMC is entitled to summary judgment on its counter-claim against Lucas Ford and third-party claim against the Guarantors.

Seeking to avoid FMC's collection efforts, Lucas Ford and the Guarantors offer a multi-pronged defense, the principal contentions of which are: 1) Ford Motor and FMC fraudulently induced the 2006 Franchise Agreement by concealing the financial circumstances and prospects of Lima Ford and falsely attributing its difficulties to mismanagement; 2) Ford Motor and FMC fraudulently induced the 2007 Financing Agreement with a misrepresentation that Lucas Ford would receive "continuing support"; 3) FMC reneged on an unconditional promise to resume financing on payment of the amounts due for July, 2008, SOT circumstances; and 4) FMC, by interfering with

4

business relations and making defamatory statements to a prospective purchaser, wrongfully caused the sale of the dealership in February, 2009, not to occur.[2]

## Discussion

### A. Count II: Fraud in the Inducement

#### 1. 2006 Franchise Agreement

Lucas Ford's and the Guarantors' first challenge to FMC's right to recover against them is that Ford Motor and FMC fraudulently induced Lucas Ford to buy Lima Ford. Lucas Ford makes this contention in Count II of its complaint, in which Lucas Ford alleges that Ford Motor and FMC gave it false information about Lima Ford's financial condition and future prospects, and attributed Lima Ford's circumstances to mismanagement.

Under Ohio law, the elements of a claim of fraudulent inducement to enter into a contract are:

> (1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) an intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance.

*Metropolitan Life Ins. Co. v. Triskett Illinois, Inc*. 97 Ohio App.3d 228, 235 (1994).

---

[2] I discuss the factual contentions relating to these contentions in my discussion of the specific causes of action pled in Lucas Ford's complaint. I do not discuss the counts in the complaint in the order in which Lucas Ford pled its claims. But for FMC's desire to enforce the guaranty, this case probably would not have arisen. It seems appropriate discuss the validity of that document in light of Lucas Ford's fraud in the inducement claims and then proceed from there. If the guaranty is not enforceable, any need for discussion of the other contentions would be *de facto*, if not *de jure*, mooted.

The only evidence that Lucas Ford now offers with regard to its claim of fraud in the inducement with regard to the 2006 Franchise Agreement is found in assertions in defendant Gouhin's affidavit attached to Lucas Ford's opposition to FMC's summary judgment motion:

> 3. Ford Credit induced plaintiff to purchase Lima Ford by, among other things, providing plaintiff with information and representations regarding the past, present, and future performance for the applicable territory, including the false assertion that Lima Ford's lack of performance was merely the result of poor management, despite knowing this information projections (*sic*) were inflated, exaggerated, unrealistic, and/or unattainable.
>
> 4. Lucas Ford relied on Ford Credit's representation in purchasing Lima Ford and entering into the April, 2006 . . . Financing Agreement, . . . .

(Doc. 80-1, ¶¶ 3, 4).

The Gouhin affidavit is entirely conclusory. There is no indication in it or anywhere else in the record before me as to who made the allegedly "inflated, exaggerated, unrealistic, and/or unattainable" projections or allegations that Lima Ford was failing due to poor management, rather than adverse market conditions or other reasons. Nor is there any indication as to how, when, where, to whom or in what manner those representations were made.

Conclusory allegations of this sort are simply not enough to survive a motion for summary judgment. *Peninsula Asset Management (Cayman), Ltd. v. Hankook Tire Co., Ltd.*, 2006 WL 2945642, *11 (N.D. Ohio), *rev'd on other grounds*, 509 F.3d 271 (6th Cir. 2007) ("Conclusory allegations are insufficient to defeat a motion for summary judgment, especially when the claim is based upon fraud, which must be both plead, and those claims supported, with particularity."); *see also*, *e.g., Dintelman v. Chicot County Memorial Hosp.*, 2011 WL 1213116, *8 (E.D. Ark.) (unsupported and conclusory allegations are insufficient to overcome summary judgment on a fraud claim); *Dunkin' Donuts Franchised Restaurants LLC v. Tim & Tab Donuts, Inc.*, 2009 WL 2997382,

\*6 (E.D.N.Y.) (An "affidavit with conclusory allegations of fraud is insufficient to support a claim of fraud at the summary judgment stage.").

There is, moreover, no basis in the Gouhin affidavit or elsewhere in the record on which a jury could find that Lucas Ford *justifiably or reasonably relied* on whatever Ford Motor or FMC told it. As summarized in *Freedom Foods, Inc. v. Rose Valley Land Group, Ltd.* 2006 WL 2045887, \*5-6 (S.D.Ohio) (citations omitted), the components of justifiable reliance on representations of another in a business context are:

> A party must prove not only that he acted in reliance on a material misrepresentation, but also that he had a right to do so. Reliance is "that degree of care which would be exercised in an average transaction between persons under similar circumstances. . .." Factors to be considered in determining whether reliance is reasonable include "the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age and mental and physical condition of the parties, and their respective knowledge and means of knowledge." An individual "has no right to rely on misrepresentations when the true facts are equally open to both parties." As a general rule under Ohio law, an individual "is expected to conduct his or her dealings with proper vigilance." "Such vigilance imputes a duty upon one to reasonably investigate the truth of representations made prior to reliance thereon." An individual must avail himself of information that is easily accessible to him.

Lucas Ford has presented no evidence as to its due diligence before buying Lima Ford. No reasonable businessman relies on the say-so of a third party when acquiring a business—even where that third party can be assumed to know all about the business and its affairs. It's up to the purchaser to do his own due diligence. The Gouhin affidavit gives no indication that Lucas Ford did any. Lucas Ford fails, accordingly, to show that it can prove this crucial component of its fraud claim *vis-a-vis* the 2006 Franchise Agreement.

That being so, Lucas Ford and the Guarantors cannot defend against FMC's motion for summary judgment on the basis that the 2006 Franchise Agreement was induced and thus invalidated by fraud.

### ii. 2007 Financing Agreement

Lucas Ford and the Guarantors also seek to avoid their obligations under the 2007 Financing Agreement and related guaranty by asserting that FMC fraudulently induced them to sign those documents. Count III of the complaint alleges that Ford Motor and FMC made false representations and supplied materially false information to Lucas Ford, "including, but not limited to, representations that Ford Credit would provide vehicle financing services to Lucas Ford and that Ford Credit would support Lucas Ford." (Doc. 1-2, ¶ 58). Those representations were made, the complaint also alleges, "with an intent not to perform." *Id*.

In its response to FMC's motion for summary judgment against them, Lucas Ford and the Guarantors again offer only the Gouhin affidavit.

In that affidavit, Gouhin asserts that, before Lucas Ford entered into the 2007 Financing Agreement, FMC "represented that, among other things, Ford Credit would support Lucas Ford despite the decrease in profitability and the dire times that it knew were inevitable." (Doc. 80-1, ¶ 8).

Thereafter, Gouhin states, FMC extended more credit to Lucas Ford, thereby "adding to the default while assuring Lucas Ford that Ford Credit would support the business." (*Id*., ¶ 11). FMC failed, Gouhin further asserts, "to abide its promise to provide the support necessary for Lucas Ford to weather the economic conditions." (*Id*., ¶ 10).

The Gouhin affidavit also states that "based on Ford Credit's representations and assurances, Lucas Ford entered into" the 2007 Financing Agreement. (*Id*. ¶ 9).

Here, again, however, the evidence Lucas Ford and the Guarantors proffer in opposition to FMC's motion for summary judgment against them is entirely insufficient. There is absolutely no detail about the who, when, what, where and how of FMC's representation that it would support Lucas Ford, or in what way any such assertions were untrue when made. The complaint alleges a lack of intent to perform, but mere allegations are not sufficient to withstand summary judgment.

The claim of fraud *vis-a-vis* the 2007 Financing Agreement does not give rise to a defense in favor of Lucas Ford and the Guarantors against FMC's motion for summary judgment.

## B. SOT Payment in Response to Alleged Promise to Resume Extending Credit

### i. Count II

Count II also claims fraud in the inducement *vis-a-vis* Lucas Ford's payment of more than $900,000 to cover SOT monies. According to the complaint, FCM promised it would immediately reinstate credit under the 2007 Financing Agreement if Lucas Ford would pay the SOT monies.

Lucas Ford did so. FMC did not resume extending credit.

FMC's failure to make good on its promise (which its witnesses deny having ever made) does not give rise to a cause of action in favor of Lucas Ford. This is so, because the 2007 Financing Agreement indisputably obligated Lucas Ford to pay the monies. Thus, its doing so could not serve as consideration for a binding contract. When Lucas Ford paid FMC, it got only that which it was entitled to receive under the 2007 Agreement.

Under Ohio law, "[n]either the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract, if it is merely a thing which the party is already bound to do either by law or a subsisting contract with the other party." *Rhoades v. Rhoades,* 40 Ohio App.2d 559 (1974) (Syllabus ¶ 1). Thus, "to be enforceable, a contract must be supported by

consideration. Generally, a court will not find that an agreement is supported by adequate consideration if a party has a preexisting duty to perform the obligations assumed under the contract." *Van Meter v. Stebner,* 1994 WL 716230, *3 (Ohio App.) (citation omitted).

Even if a jury were to find, despite the lack of a contemporaneous writing, and the apparent failure of Lucas Ford to respond when FMC did not "immediately" reopen the line of credit, that FMC had made such "promise," it was not bound by it under Ohio law. Even if FMC tricked Lucas Ford in to paying what it owed, it was doing nothing either wrongful nor actionable.

### ii. Count VI: Promissory Estoppel

Count VI asserts a cause of action for promissory estoppel that likewise is grounded in the allegation that FMC promised reinstatement of its line of credit if Lucas Ford would pay the SOT monies it owed to FMC.

As summarized in *Gus Hoffman Family Ltd. Partnership v. David*, 2007 WL 2229569, *1 (Ohio App.) (citations omitted):

> The elements of promissory estoppel are: (1) a clear and unambiguous promise (2) upon which it would be reasonable and foreseeable to rely, and (3) actual reliance on the promise (4) to the detriment of the one who relied.
> Promissory estoppel is a quasi-contractual concept where a court in equity seeks to prevent injustice by effectively creating a contract where none existed.
> Promissory estoppel aids the enforcement of promises by supplying the element of consideration when necessary to prevent injustice. Thus, promissory estoppel can serve as a substitute for consideration in contract formation.

Although promissory estoppel can supply consideration where none otherwise exists, a party asserting promissory estoppel must show that the promisor had authority to make the promise before the principal can be bound. As the court stated in *Telxon Corp. v. Smart Media of Delaware, Inc.* 2005 WL 2292800, *23 (Ohio App.) (citation omitted): "If the alleged promisor has no authority to make the promise, and the promisee knows or should know of that lack of authority, then

promissory estoppel must fail as a matter of law. Simply put, such reliance cannot be reasonable." *See also Piper Acceptance Corp. v. Tenex Corp.*, 1986 WL 11248, *2 (Ohio App.) (a person dealing with a known agent must acquaint himself with the extent of the agent's authority).

Although the parties dispute whether FMC promised immediate reinstatement of the suspended line of credit, I find that FMC nonetheless is entitled to summary judgment as to this claim. This is so because Lucas Ford has not shown that either person who it claims made the "promise" at issue had authority to cause "immediate" reinstatement of the line of credit.

Gouhin's affidavit asserts that Lucas Ford believed that the putative promisors had that authority. Simply pointing to the title each held is not proof that either could make such commitment on behalf of FMC. Lucas Ford's belief was not reasonable, in view of the undisputed assertion by Randy Westbeld, FMC's Dealer Account Manager, that he told Lucas Ford that information supporting the dealer's financial condition had to be reviewed elsewhere.

I conclude, accordingly, that FMC is entitled to summary judgment on Lucas Ford's claim of promissory estoppel.

### C. Count III: Negligent Misrepresentation

Count III alleges that FMC negligently misrepresented that it would "provide vehicle financing services to Lucas Ford and that Ford Credit would support Lucas Ford." (Doc. 1-2, ¶ 58).

The Ohio Supreme Court defined the elements of the tort of negligent misrepresentation in *Gutter v. Dow Jones, Inc.*, 22 Ohio St.3d 286 (1986) (applying 3 Restatement of the Law 2d, Torts (1965) 126-127, § 552(1)):

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to

exercise reasonable care or competence in obtaining or communicating the information.

The elements of negligent misrepresentation are similar to the elements of fraud. *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 104 (2000). As with a fraud claim, justifiable reliance is a *prima facie* element of negligent misrepresentation. *Sindel v. Toledo Edison Co.*, 87 Ohio App.3d 525, 531 (1993).

This allegation suffers from the same paucity of evidentiary support that defeats Lucas Ford's claims for fraud in the inducement. Though the elements may differ somewhat, the need to produce sufficient evidence to prevail in the face of a motion for summary judgment remains the same. FMC is entitled to summary judgment with regard to Lucas Ford's claim of negligent misrepresentation.

## D. Count III:
## Breach of Duty of Care

Count III also alleges that FMC owed Lucas Ford "a duty of care to ensure that Lucas Ford was provided truthful and accurate information [and] did not become more and more indebted on a credit line that was about to be unilaterally terminated."

In Ohio, "'one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" *State v. Warner*, 55 Ohio St.3d 31, 54 (1990) (quoting *Chiarella v. U.S.*, 445 U.S. 222, 228 (1980)).

The Ohio Supreme Court has expressly held that, "[t]he relationship of debtor and creditor without more is not a fiduciary relationship. A fiduciary relationship may be created out of an

informal relationship, but this is done only when both parties understand that a special trust or confidence has been reposed." *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282 (1979) (Syllabus ¶ 1).

A claim for breach of fiduciary relationship has three essential elements: 1) existence of a duty arising from a fiduciary relationship; 2) failure to observe the duty; and 3) injury resulting from the breach. *E.g., Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 70 (2008).

Lucas Ford's complaint has not specifically alleged the existence of a fiduciary duty—an essential precondition to imposition of a duty of care in a commercial setting, such as existed here.

Nor has Lucas Ford has offered any evidence supportive of any such contention.

To the extent that Lucas Ford seeks in this allegation to assert a fraud by failure to disclose, its claim fails for the same reasons it other fraud in the inducement and negligent misrepresentation claims fail. There is no proof of a duty to disclose, and no evidence showing that any such duty was breached.

FMC is entitled to summary judgment as to any claim of breach of standard of care/duty to disclose.

### E. Counts IV and V:
### Tortious Interference/Defamation

Count IV of the complaint alleges the FMC tortiously interfered with the prospective sale of Lucas Ford. Count V alleges that FMC defamed Lucas Ford.

Both claims arise from a statement which, according to deposition testimony by Mr. Gouhin, a prospective purchaser, Tom Reineke, said had been made to Reineke by a person whom Reineke

declined to identify. According Gouhin, Reineke was told "that the deal was off and that [Lucas Ford was] out of trust and having real issues at the dealership." (Doc. 73 at 29).

This information, Lucas Ford claims, caused the prospective sale to Rieneke to fall through.

Lucas Ford offers no evidence other than Gouhin's testimony about the alleged tortious interference defamation. Gouhin's statement does not meet the requirement of Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Gouhin's testimony is multiply defective: it is not made on personal knowledge and it relates hearsay (*i.e.*, what Reineke told Gouhin); and the unidentified original declarant has not been shown to have either personal knowledge or an affiliation with FMC.

Lucas Ford tendering no admissible evidence in support of its claims for tortious interference and defamation, FMC is entitled to summary judgment as to those claims

### F. Count I: Breach of Contract

Because the allegations of Count I overlap to some extent the allegations underlying other counts in the complaint, I deal with FMC's motion for summary judgment as to that count last.

Count I alleges:

- Lucas Ford could not operate without a line credit "and, therefore, was forced to comply" with FMC's "demands";

- FMC assured Lucas Ford that if it paid the SOT shortfall, it would "immediately reinstate" the line of credit to Lucas Ford;

- Though Lucas Ford paid in excess of $900,000, FMC reneged on its agreement to reinstate the line of credit;

- FMC terminated the line of credit and forced Lucas Ford to surrender its inventory;

- FMC breached its obligations under the 2007 Financing Agreement, "including duties of good faith and fair dealing, and by suspending and ultimately terminating" the 2007 Agreement;

- FMC provided credit until July, 2008, despite its knowledge of Lucas Ford's default, thereby causing Lucas Ford to fall deeper into debt;

- FMC established a course of dealing on which Lucas Ford came to rely, creating a good faith obligation on FMC's part to perform in accordance with its commitments and assurances;

- As a result of FMC's breach and wrongful termination of the 2007 Financing Agreement and breach of the covenant of good faith and fair dealing, Lucas Ford incurred damages.

In opposition to FMC's motion for summary judgment as to Count I, Lucas Ford argues, in essence, that FMC failed to perform its obligations in good faith and deal fairly with Lucas Ford because it did not soon enough enforce its undoubted rights under the 2007 Financing Agreement to declare a default, stop extending credit and foreclose on the business. Instead, until July, 2008, FMC continued to extend funds to Lucas Ford.

On the other hand, Lucas Ford contends that FMC failed to make good on its purported commitment to support Lucas Ford.

In other words, according to Lucas Ford, FMC kept the spigot on too long and closed it too soon.

Lucas Ford does not argue that FMC was not entirely within its rights under the terms and conditions of the 2007 Financing Agreement to do those things which Lucas Ford claims violated the inherent obligation of good faith and fair dealing. Indeed, Lucas Ford expressly acknowledges that the 2007 Agreement gave FMC the right to do what it did:

> Here, Ford Credit had significant discretionary authority under the November 2007 Wholesale Agreement . . . [including ]discretion as to, among other things, the extent, terms and conditions, and time period for "advances," as well to "declare immediately due and payable all or any part of the unpaid balance" and to "declare the agreement . . . terminated and cancelled and retain any sums of money") . . . .. Had Ford Credit merely exercised its rights in this regard, it may not have been in material breach of the Agreement. However, Ford Credit did not accelerate and cancel the Agreement. Instead, knowing Lucas Ford was in default, Ford Credit readily advanced credit, causing Lucas Ford to go deeper into debt while assuring Lucas Ford that Ford Credit would support the business.

(Doc. 79, at 6.)

Instead, Lucas Ford appears to be claiming that FMC abused its discretion, and did so to such an extent and in such a manner that it was acting in bad faith.

The sequence of events giving rise to this claim is not disputed. Consequently, whether the evidence suffices to enable a jury to find in favor of Lucas Ford is for me to determine. I conclude that it is not.

The outcome as to this claim is controlled by the Ohio Supreme Court's decision in *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 444 (1996). There, as is the case here, there was no dispute that a lender was acting within the scope of its rights under a loan agreement when it "did nothing more than stand on its right to require payment of [the borrower's] contractual obligations."

Finding no bad faith in the lender's having done so, the court stated in *Ed Schory*:

> [The lender]'s decision to enforce the written agreements cannot be considered an act of bad faith. Indeed, [the lender] had every right to seek judgment on the various obligations owed to it by [the debtor] and to foreclose on its security. As the Seventh Circuit Court of Appeals stated in *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting* (7th Cir., 1990), 908 F.2d 1351, 1357-1358:
>
>> "Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.' Although courts often

16

> refer to the obligation of good faith that exists in every contractual relation, * * * this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.
>
> * * * * *
>
> "Although Bank's decision left Debtor scratching for other courses of credit, Bank did not create Debtor's need for funds, and it was not contractually obliged to satisfy its customer's desires. The Bank was entitled to advance its own interests, and it did not need to put the interests of Debtor * * * first. To the extent *K.M.C., Inc. v. Irving Trust Co.*, 757 F.2d 752, 759-63 (6th Cir.1986), holds that a bank must loan more money or give more advance notice of termination than its contract requires, we respectfully disagree. First Bank of Whiting is not an eleemosynary institution. It need not throw good money after bad, even if other persons would catch the lucre."

*Id.* at 443-44.

As the discussion of the other claims shows, Lucas Ford cannot prevail on any of those claims. It has not shown that FMC fraudulently induced it to sign either the 2006 Franchise or 2007 Financial Agreements, negligently misrepresented anything, is liable on a promissory estoppel theory, or tortiously interfered with business relations or defamed Lucas Ford.

Lucas Ford not having shown that FMC did anything cognizably wrong or legally culpable, it cannot prevail on any aspect of the assertions in Count I. Indeed, Lucas Ford expressly acknowledges that FMC remained within its contractual rights. Having done so, FMC cannot be found liable for having conducted itself in bad faith or pursuing a wrongful course of dealing with Lucas Ford.

### G. Count VII: Civil Conspiracy

Count VII of Lucas Ford's complaint asserts that FMC and Ford Motor conspired to commit the acts giving rise to its claims in Counts I through V of the complaint.

The elements of a civil conspiracy in Ohio are: 1) a malicious combination; 2) between two or more persons; 3) injury to person or property; and 4) existence of an unlawful act independent from the actual conspiracy. *In re Nat'l Cent. Fin. Enters., Inc., Inv. Lit.,* 617 F.Supp.2d 700 (S.D. Ohio 2009) (citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 282 (1993)).

In light of my determination that FMC is entitled to summary judgment as to all claims asserted in the first five counts of the complaint, it likewise is entitled to summary judgment on this claim. Unable to prevail on any of its more specific claims, Lucas Ford cannot show the occurrence of an independent unlawful act resulting from a "malicious combination" between Ford Motor and FMC.

**Conclusion**

In light of the foregoing, it is hereby

ORDERED THAT:

1. The motion of Ford Motor Credit Corporation for summary judgment as to the claims against it by Lucas Ford, LLC (Doc. 60) be, and the same hereby is granted; and

2. The motion of Ford Motor Credit Corporation for summary judgment as to its counter claims against Lucas Ford, LLC and third-party claims against Sean Gouhin and Christopher W. Lucas (Doc. 59) be, and the same hereby is granted.

So ordered.

s/James G. Carr
Sr. United States District Judge